[No. 41209-4-I.   Division One.   April 19, 1999.]
THE STATE OF WASHINGTON, *Respondent*, v. KELIA PALMER, *Appellant*.

---

*James R. Dixon* and *Neal J. Philip*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Kristin Johnson Chandler, Deputy*, for respondent.

BAKER, J. — Kelia Palmer was convicted of two counts of second degree rape. On appeal, he challenges his sentence, arguing that the two crimes qualify as the same criminal conduct for purposes of RCW 9.94A.400(1)(a). Following *State v. Walden*,[1] we agree, and remand for resentencing.

I

Palmer was scheduled to visit his children at his ex-wife's (K.P.'s) house from 5:30 to 8:30 in the evening. When Palmer did not show up for the appointment and did not call, K.P. went to her mother's house. At around 8:00 Palmer showed up at K.P.'s mother's house. K.P. took the kids home so that Palmer could visit them.

When Palmer arrived at K.P.'s he "had an attitude" about the custody arrangements. He visited the kids for a little over an hour. K.P. and Palmer argued about putting their daughter to bed. Their argument escalated and K.P. called the police. Palmer persuaded K.P. to tell the police everything was okay, because he did not want to be arrested on an outstanding warrant.

After the police left, Palmer refused to leave. K.P. sat on the couch in the living room and Palmer sat in front of her on his knees. He rubbed her legs and told her that he wanted to reconcile. Palmer followed K.P. and continued to rub her legs as she moved away. K.P. repeatedly asked Palmer to stop and when he refused, she got up, opened the door, and asked him to leave.

Palmer slammed the door, grabbed K.P. by the hair, and started to choke her. He told her that he was going to count

---

[1] 69 Wn. App. 183, 847 P.2d 956 (1993).

backwards from five, and at zero she had better do what he wanted or there was going to be a problem. Palmer dragged K.P. to the couch by her hair, still choking her. Palmer unbuttoned K.P.'s jeans and struggled with her to take them off. K.P. ran to the door and yelled for help. Palmer slammed the door and led K.P. back to the couch, where the struggle continued. Palmer ripped K.P.'s underwear off and pried her legs open. K.P. tried to get away again, and Palmer choked and slammed her. K.P. relented when Palmer began counting down from five again.

Against K.P.'s will, Palmer forced her legs apart and started to perform oral sex on her. K.P. continued asking him to stop while Palmer continued the contact.

Palmer then took off his clothes and told K.P. to straddle him. K.P. was crying and told Palmer that she did not want to do that. Palmer began to count down and when K.P. did not move, he grabbed her by the hair, choked her and then he continued to ask K.P. if she "was going to do what he wanted [her] to do." Out of fear, K.P. straddled Palmer for "maybe ten minutes" while Palmer vaginally raped her. Twice more, Palmer moved K.P. into a different position and reinserted his penis, finally ejaculating.

Palmer left the house around midnight and K.P. called her friend, who suggested she call a rape crisis line. After talking with the crisis line, she called the police. Palmer was convicted of one count for the oral/genital rape, and a second count for the penile/vaginal rapes.

## II

RCW 9.94A.400(1)(a) counts two or more current crimes as the same crime for calculating a convicted defendant's offender score. The "same criminal conduct" requires that the crimes (1) had the same objective criminal intent, (2) were committed at the same time and place, and (3) involved the same victim.[2] RCW 9.94A.400(1)(a) is to be

[2]RCW 9.94A.400(1)(a); *Walden*, 69 Wn. App. at 187-88.

construed narrowly.[3]

We review lower court decisions in this context for abuse of discretion or misapplication of the law.[4] Palmer's offenses involved the same victim and occurred at the same place. The State argues that they occurred at distinctly different times. We disagree. The few minutes between the rapes is sufficiently close so that it satisfies the RCW 9.94A.400(1)(a) time prong, because in this time Palmer's activity exclusively involved threats and use of force in preparation for the penile/vaginal rape which immediately followed the oral rape.

The main question presented is whether the intent was the same. In reviewing the intent prong, "[t]he relevant inquiry is 'the extent to which the criminal intent, objectively viewed, changed from one crime to the next. . . .' "[5] The State relies on *State v. Grantham* to support its argument that because the two rapes were relatively close in time, but not simultaneous, there were two different intents.[6] *Grantham*, which affirmed a trial court's determination that two rapes were not the same criminal conduct for sentencing purposes, is factually distinguishable from the present case. In *Grantham*, the evidence supported a conclusion that the criminal episode had ended with the first rape, only to reoccur when a new argument erupted. In contrast, Palmer's violence towards K.P. was continuous and patterned. Palmer did not do anything be-

---

[3]*State v. Porter,* 133 Wn.2d 177, 181, 942 P.2d 974 (1997) ("Although the statute is generally construed narrowly to disallow most claims that multiple offenses constitute the same criminal act, there is one clear category of cases where two crimes will encompass the same criminal conduct—'the repeated commission of the *same crime* against the same victim over a short period of time.' "(emphasis in original.)); *State v. Flake,* 76 Wn. App. 174, 180, 883 P.2d 341 (1994).

[4]*Walden,* 69 Wn. App. at 188, (citing *State v. Burns,* 114 Wn.2d 314, 317, 788 P.2d 531 (1990)); *State v. Stearns,* 61 Wn. App. 224, 233, 810 P.2d 41, *review denied,* 117 Wn.2d 1012, 816 P.2d 1225 (1991). *See also In re Personal Restraint of Vehlewald,* 92 Wn. App. 197, 963 P.2d 903 (1998).

[5]*State v. Williams,* 135 Wn.2d 365, 368, 957 P.2d 216 (1998) (quoting *State v. Vike,* 125 Wn.2d 407, 411, 885 P.2d 824 (1994)).

[6]84 Wn. App 854, 932 P.2d 657 (1997).

tween the oral/genital rape and the first genital/genital rape that was not related to raping K.P.

The present case is more factually similar to *Walden*.[7] Walden was convicted of a first rape that involved oral/genital contact and a second attempted rape that involved anal penetration.[8] The two rapes were in short succession.[9] In determining whether Walden qualified for the RCW 9.94A.400(1)(a) same criminal conduct offender score calculation, we held that the underlying conduct of both charges involved the same objective criminal intent of sexual intercourse.[10]

The fact that Palmer renewed his threats between the two rapes, and had an opportunity to reflect does not alter our analysis. Palmer's threats and use of violence were no different between the oral/genital rape and the various genital/genital rapes throughout the evening. The facts do not support a conclusion that his objective criminal intent changed.

For these reasons, the two rapes should have been counted as the same criminal conduct for purposes of RCW 9.94A.400(1)(a). Accordingly, we hereby reverse and remand for resentencing.

KENNEDY, C.J., and COLEMAN, J., concur.

---

[7]*Walden*, 69 Wn. App. 183.

[8]*Id.* at 184.

[9]*Id.* at 188.

